IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER OSE-AFIANA,
   *Plaintiff*,

v.                                                    Civil Action No. ELH-12-1834

COASTAL INTERNATIONAL
SECURITY, INC.,
   *Defendant*.

**MEMORANDUM OPINION**

Plaintiff Christopher Ose-Afiana, who is self-represented, filed a Complaint against his former employer, Coastal International Security, Inc. ("Coastal"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ECF 1.[1]  In particular, plaintiff alleges that he was suspended from work and eventually terminated from employment because of his national origin (Nigerian) and in retaliation for filing an Equal Employment Opportunity complaint about alleged discriminatory treatment. *Id.*

Coastal has filed a Motion for Summary Judgment ("Motion," ECF 34), along with a Memorandum of Law ("Memo," ECF 34-1) and several exhibits.  Plaintiff filed two separate responses to the Motion, at ECF 39 and ECF 40, with exhibits.  Coastal filed its Reply (ECF 43) and, with leave of Court, plaintiff filed a Surreply.  *See* ECF 45; ECF 47.  No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, the Motion will be granted.

---

[1] The case was originally assigned to Judge Alexander Williams but was transferred to me on November 27, 2013.

## Factual Summary

Coastal provides security services through contracts with government agencies throughout the United States. Coastal represents itself as an equal opportunity employer that prohibits discrimination and harassment on any protected basis, including "race, color, sex, age, religion, national origin, sexual orientation, physical or mental disability, veteran's status or another other status protected by state or federal law." *See* Motion Ex. A, Declaration of Nkrumah Williams, Contract Manager for Coastal ("Williams Decl."), ECF 34-2 at ¶ 4[2]; *see also* Exs. 1 and 2 to Williams Decl.

At the relevant time, Coastal had a contract with Federal Protective Security to provide armed security services at the Ronald Reagan Building and International Trade Center located in Washington, D.C. ("Ronald Reagan Building" contract). Williams Decl. at ¶¶ 2–3; Motion Ex. B, Deposition of Christopher Ose-Afiana ("Ose-Afiana Depo."), ECF 34-3 at 9:9–20, 10:13–19. In March 2009, plaintiff began work as a full-time security officer with Coastal on the Ronald Reagan Building contract. Ose-Afiana Depo. At 10:13-22; 11:1-2. In addition, plaintiff worked full-time as a security guard for another employer, Covenant Homeland Security Solutions, Ltd., working "about 80 Hours a week. . . ." ECF 40-1 at 3; *see* Ose-Afiana Depo. at 11:17-22.

All security officers working for Coastal on the Ronald Reagan Building contract— including plaintiff—are members of a bargaining unit whose terms and conditions of employment are governed by a collective bargaining agreement ("CBA") between Coastal and the International Union, Security, Police and Fire Professionals of America ("SPFPA") and its Amalgamated Local 287. Williams Decl. at ¶¶ 5–6; *see* CBA, Ex. 3 to Williams Decl. Each

---

[2] The page numbers cited throughout this opinion refer to pagination provided in the electronic filing, which may not conform to the pagination originally provided by the defendant.

provision of the CBA details standards of conduct and disciplinary procedures, including requirements regarding attendance and punctuality.  Williams Decl. at ¶ 6.  Section 7.1 of the CBA sets forth the procedure for the application of progressive discipline.  Under the CBA, all security officers must attend a pre-shift meeting ten minutes prior to each shift, known as guard mount.  *See* Williams Decl. at ¶ 8; Ose-Afiana Depo. at 15:11–17.  Failure to attend guard mount may result in progressive discipline, the procedure for which is set forth in § 7.2 of the CBA.

Additionally, § 7.3 of the CBA provides for disciplinary procedures related to cancelling work, or "call off," without adequate notice.  *Id.*  And, § 7.4 of the CBA provides that serious offenses will subject a security officer to immediate discharge.  Examples of such offenses include inattention to duty—such as sleeping while on duty or abandoning post—and gross insubordination towards the Company, its supervisors, or the Company's client.  *See id.*  Section 7.5 of the CBA makes clear that Coastal "has the right to determine the level and degree of discipline."

On April 13, 2009, plaintiff was issued a disciplinary warning, known as a personnel action report ("PAR"), for missing guard mount and arriving 10 minutes late for his scheduled shift.  Ex. 3 to Ose-Afiana Depo.  On July 14, 2009, plaintiff was issued another PAR for arriving late to guard mount.  Ex. 4 to Ose-Afiana Depo.  On November 22, 2009, plaintiff received a PAR for arriving over two hours late for his scheduled shift.  Ex. 5 to Ose-Afiana Depo.  On December 5, 2010, plaintiff was again issued a PAR for arriving an hour late to work.  Ex. 6 to Ose-Afiana Depo.  And, he received a PAR on April 5, 2010, for failing to report to guard mount.  Ex. 7 to Ose-Afiana Depo.  On June 5, 2010, he was issued a PAR for reporting late to work.  Ex. 8 to Ose-Afiana Depo.  Plaintiff also received a PAR on June 8, 2010, for

reporting to work over two and a half hours after his scheduled shift time.  Ex. 9 to Ose-Afiana Depo.  Plaintiff claimed that he was late because his child's daycare had been shut down without prior notice, and stated that he would provide Coastal with verification supporting the same.  *Id.*; Ose-Afiana Depo. at 21:17-20.   However, he never provided Coastal with the promised verification.  Ose-Afiana Depo. at 22. On August 27, 2010, plaintiff was observed on his cellular telephone while on duty, which resulted in the issuance of another PAR.  Ex. 10 to Ose-Afiana Depo.; Ose-Afiana Depo. at 24:6-15.

On September 27, 2010, plaintiff informed Coastal that, due to a family emergency, he had booked a trip to Africa, leaving the next day, and would not return to work until October 31, 2010.  Williams Decl. at ¶ 11; Ex. 11 to Ose-Afiana Depo.  In violation of the CBA, plaintiff did not obtain the requisite prior approval before taking a month-long leave, nor did he provide any documents that proved his need for travel.  *Id.*  Moreover, plaintiff failed to return to work on October 31, 2010, and did not contact anyone at Coastal to advise of his absence.  *Id.*; Williams Decl. at ¶ 11.  When plaintiff did return to work on November 1, 2010, he was issued a PAR, which was deferred for investigation of the incident.  *See* Ex. 11 to Ose-Afiana Depo.

On November 19, 2010, Coastal received a complaint from the Project Manager of the Department of Commerce, who claimed to have witnessed plaintiff sleeping on post with his feet propped on the x-ray machine.  Williams Decl. at ¶ 12; Ex. 4 to Williams Decl.  Based upon this incident, plaintiff was issued a PAR, which was also deferred to investigation.  Ex. 4 to Williams Decl.  Due to the nature of plaintiff's conduct and his repeated violations of attendance policies, the site's management, through Williams, submitted a request to Corporate Human Resources to suspend plaintiff for three days.  Williams Decl. at ¶ 13.   This request was approved on

November 22, 2010, and plaintiff was subsequently informed of the action.  *Id.*; Ex. 5 to Williams Decl.  Plaintiff denies that he was asleep while on duty, but does not deny that his feet were propped up on the x-ray machine.  *See* ECF 39-1 (statement by plaintiff's co-worker, Kyra Arrington, dated November 20, 2010, stating that Arrington did not see plaintiff sleeping but did see his feet "propped up" because they had been "hurting").  Moreover, the report of the incident noted that a "Female PSO stated that [plaintiff] wasn't feeling well."  ECF 39-4.

Despite the three-day suspension, plaintiff continued to struggle with attendance issues.  Williams Decl. at ¶ 14.  On December 10, 2010, plaintiff was issued a PAR because he was late for guard mount.  Ex. 16 to Ose-Afiana Depo.  On December 11, 2010, plaintiff was over an hour late for duty and was given another PAR.  Ex. 17 to Ose-Afiana Depo.  On December 18, 2010, plaintiff again failed to report on time to guard mount and was issued a PAR.  Ex. 18 to Ose-Afiana Depo.  Based upon these continued violations, Williams submitted a recommendation to Human Resources on December 22, 2010.  Pursuant to Coastal's progressive discipline policies, he requested a five-day suspension of plaintiff and the issuance of a final written warning.  Williams Decl. at ¶ 15; Ex. 6 to Williams Decl.  This request was approved on January 19, 2011, and a five day suspension was subsequently issued to plaintiff, along with a final warning stating that his performance had to improve immediately.  Ex. 21 to Ose-Afiana Depo.; Williams Decl. at ¶ 15; Ex. 6 to Williams Decl.  In particular, plaintiff was warned that "any further substantiated violations of any nature will result in the termination of his employment with the Coastal."  Ex. 21 to Ose-Afiana Depo.; Williams Decl. at ¶ 15.

In the interim, prior to issuance of the five-day suspension, plaintiff was once again late for guard mount on January 11, 2011, and he failed to report for work on January 14, 2011, after

informing his supervisor that he would be late for his scheduled shift.  Williams Decl. at ¶ 16.

Plaintiff was issued PARs for both incidents.  Exs. 19 and 20 to Ose-Afiana Depo.

On November 30, 2010, plaintiff contacted the Informal Complaint Center of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Office of Equal Employment Opportunity and submitted a complaint alleging that Coastal subjected him to discriminatory treatment on the basis of his national origin (Nigerian).  *See* Ex. 1 to Declaration of S. Libby Henninger, counsel for Coastal ("Henninger Decl.," ECF 34-4).[3]

Plaintiff was scheduled to work on January 29, 30, 31 and February 1, 2011.  Williams Decl. at ¶ 19.  However, he did not report for his scheduled shifts, nor did he contact his shift supervisor or otherwise notify anyone at Coastal that he would not be at work.  *Id.*  Plaintiff did not return to work until February 4, 2011, at which time he was issued a PAR for failing to report to work for his scheduled shifts, and the matter was deferred to investigation.  *Id.*; Ex. 24 to Ose-Afiana Depo.  Based upon plaintiff's failure to report to work despite just having received a final warning regarding his attendance, Mr. Williams subsequently made a request to Human Resources to terminate plaintiff's employment with Coastal.  Williams Decl. at ¶ 20; Ex. 7 to Williams Decl.  Plaintiff was suspended on February 11, 2011, pending resolution of the termination request.  Ex. 26 to Ose-Afiana Depo.; Ose-Afiana Depo. at 38:20-39-21.

Plaintiff's termination was approved on March 31, 2011.  Williams Decl. at ¶ 21; Ex. 8 to Williams Decl.  The notice of termination was mailed to plaintiff's address of record on April 1, 2011.  Williams Decl. at ¶ 21; Ex. 8 to Williams Decl.

---

[3] Plaintiff's direct supervisor, Lieutenant Olawale Alani Abu, is also Nigerian.  Williams Decl. at ¶ 22; Ose-Afiana Depo. at 40:8-14.  But, plaintiff suggests that Nkrumah Williams, a "Ghanaian National Origin," favored "fellow Ghanaian officers. . . ."  ECF 40-1 at 9.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 7, 2011.  Ex. 29 to Ose-Afiana Depo.  He received a right to sue letter from the EEOC on March 20, 2012.  Ose-Afiana Depo. at 43:16-44:4; Ex. 31 to Ose-Afiana Depo.

Additional facts will be included in the Discussion.

**Standard of Review**

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  It provides, in part:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In response to a motion for summary judgment, the non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson,* 477 U. S. at 247-48 (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts'"

showing that there is a triable issue.  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). In resolving a summary judgment motion, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The "judge's function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.  If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," there is a dispute of material fact that precludes summary judgment.  *Id.* at 248.

Because plaintiff is self-represented, his pleadings are "'liberally construed'" and "'held to less stringent standards than formal pleadings drafted by lawyers.'"  *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citation omitted).  "However, liberal construction does not absolve Plaintiff from pleading a plausible claim."  *Bey v. Shapiro Brown & Alt, LLP*, ___ F. Supp. 2d ___, 2014 WL 661586, at *3 (D. Md. Feb. 20, 2014).

### Discussion

### I.

Title VII prohibits an employer from, *inter alia*, discharging or discriminating against "any individual with respect to his compensation terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

The record contains no direct evidence of discrimination or retaliation. Therefore, plaintiff's claims must proceed under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* proof scheme, the plaintiff at trial must first establish, by a preponderance of the evidence, a "prima facie case of discrimination." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010); *see Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 719 (4th Cir. 2013). Although the precise formulation of the required prima facie showing will vary in "different factual situations," *McDonnell Douglas*, 411 U.S. at 802 n. 13, the plaintiff is generally required to show that the employer took adverse action against an employee who was qualified for employment, "under circumstances which give rise to an inference of unlawful discrimination." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

With respect to a claim of retaliation, the Fourth Circuit has framed the prima facie case as follows: "'1) the plaintiff engaged in a protected activity, such as filing a complaint with the EEOC; 2) the employer acted adversely against the plaintiff; and 3) the protected activity was causally connected to the employer's adverse action.'" *Okoli v. City of Baltimore*, 648 F.3d 216, 223 (4th Cir. 2011) (citation omitted). Termination constitutes an adverse employment action. *See Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999).

If the plaintiff establishes a prima facie case, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). "If the defendant carries this burden of production, the presumption raised by the prima

facie case is rebutted." *Burdine*, 450 U.S. at 255.    In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant" and "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11 (1993).  Then, the plaintiff must prove, by a preponderance of evidence, "that the proffered reason was not the true reason for the employment decision," and that the plaintiff "has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256; *see also Reeves*, 530 U.S. at 143; *St. Mary's Honor Ctr.*, 509 U.S. at 516–20; *Adams v. Trustees of Univ. of North Carolina–Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[I]n demonstrating the Defendants' decision was pretext, [Plaintiff] had to prove '*both* that the reason was false, *and* that discrimination was the real reason.'") (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)) (emphasis in original).

The relevance of the *McDonnell Douglas* scheme outside of the trial context is limited, however.  The Fourth Circuit has admonished district courts at the summary judgment stage to "'resist the temptation to become so entwined in the intricacies of the [*McDonnell Douglas*] proof scheme that they forget that the scheme exists solely to facilitate determination of the ultimate question of discrimination *vel non*.'"  *Merritt*, 601 F.3d at 295 (quoting *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991)) (alterations in *Merritt*; internal quotation marks omitted).  Further, the Fourth Circuit has observed that, "[n]otwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of 'the ultimate question of discrimination *vel non*.'"  *Id*. at 294–95 (citation omitted).  Nevertheless, the Court has referred to the *McDonnell Douglas* proof scheme in analyzing the

propriety of an award of summary judgment.  *See, e.g., Warch v. Ohio Casualty Insurance Co.*, 435 F.3d 510, 517 (4th Cir. 2006).

II.

Plaintiff has failed to adduce evidence of a causal connection between his protected activity and the adverse employment action.  *See Okoli*, 648 F.3d at 223.  To satisfy this element, plaintiff must show that "the employer [took] the adverse employment action *because* the plaintiff engaged in protected activity."  *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (emphasis in *Dowe*).  Pursuant to the Supreme Court's ruling in *University of Texas Southwestern Medical Center v. Nassar*, ____ U.S. ____, 133 S. Ct. 2517, 2534 (2013), "a plaintiff making a retaliation claim . . . must establish that his or her protected activity was a but-for cause" of the employer's adverse action.

The evidence does not show that Coastal knew of plaintiff's protected activity when he was first suspended in December 2010.  *See* Williams Decl. at ¶ 17; Ex. 6 to Williams Decl.  "A plaintiff cannot prove causation without showing that the decisionmaker actually had knowledge of the protected activity at the time the decisionmaker decided to take the adverse action."  *Mezu v. Morgan State Univ.*, 2010 WL 1068063, at *10 (D. Md. Mar. 18, 2010).

In cases where the employer has proffered evidence of a legitimate reason for its adverse action in its motion for summary judgment, it is a common practice to assume, without deciding, that the plaintiff has established a prima facie case.  *See, e.g., Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007), *cert. denied*, 552 U.S. 1102 (2008); *Hux v. City of Newport News*, 451 F.3d 311, 314 (4th Cir. 2006); *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (en banc); *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 319–20 (4th Cir.

2005); *see also Geist v. Gill/Kardash P'ship*, 671 F. Supp.2d 729, 736–37 (D. Md. 2009); *Spriggs v. Pub. Serv. Comm'n*, 197 F. Supp. 2d 388, 394 (D. Md. 2002). Even assuming that plaintiff has established a *prima facie* case of discrimination and/or retaliation, he cannot show that Coastal's reason for termination was pretextual.

Coastal has presented abundant, largely uncontroverted evidence of a legitimate, nondiscriminatory reason for disciplining and ultimately terminating plaintiff. It submitted documented evidence that plaintiff repeatedly reported to work late, failed to report for his scheduled shifts, talked on his cell phone while on duty, and acted inappropriately toward his supervisor. *See* Exs. 5–26 to Ose-Afiana Depo.; Williams Decl. at ¶¶ 9–22.

For his part, plaintiff has offered no evidence from which a reasonable jury could conclude that Coastal's proffered reason was false or that its true reason for taking disciplinary action against plaintiff was unlawful discrimination or retaliation. Indeed, plaintiff does not deny that he violated several workplace rules. In ECF 40-1 at 5, he said: "Hence Plaintiff do not deny some of Defendant's allegations of Tardiness and Absenteeism which were beyond his control but contests Defendants [sic] insensitivity to the circumstantial industry trend to excuse Plaintiff's tardiness where applicable particularly because Defendant benefited from the trainings and certifications derived from the absenteeism." Plaintiff's belief that he should not have been disciplined does not satisfy his burden to proffer evidence from which a reasonable jury could find that he was discriminated and/or retaliated against, in violation of Title VII.

I do not doubt that plaintiff was dissatisfied with his employment experience at Coastal and believes that he should not have been fired. But, this Court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged

with employment discrimination." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (internal quotation marks omitted).

## Conclusion

Plaintiff failed to show how a reasonable jury could find in his favor.   Indeed, he admitted facts, or failed to dispute facts, that corroborate Coastal's argument that it had a legitimate, nondiscriminatory, and nonretaliatory reason for suspending him and terminating his employment.   Therefore, no reasonable jury could find that Coastal violated Title VII. Accordingly, I will grant summary judgment in favor of Coastal.   An Order follows.


Date: July 3rd, 2014                                                 _____/s/_____
                                                                                        Ellen Lipton Hollander
                                                                                        United States District Judge